So the first case on the call of the DACA is agenda number 9 this morning, number 125062, Margaret Dynak-Pellant v. Board of Education of Wood Dale School District 7. And please, Ryan Matthew Tomei, please begin. May it please the Court, Mr. President and Counsel. This case before you presents two issues. The primary question is a narrow and straightforward issue of statutory interpretation concerning the timing of the use of 30 days of accumulated paid sick leave under Section 246 of the school code. The second issue is subordinate to the first, in that it asks that this Court conclude that Ms. Dynak was entitled to use the requested use of paid sick leave for burden, as we believe it should, to decide whether she was entitled to an award of attorney's fees under the Attorney's Fees and Wage Actions Act. Specifically, with respect to the primary question under Section 246. Could you speak up a little bit, please? Thank you. With respect to the primary question under 246, the question is whether the plaintiff, Margaret Dynak, was entitled to be absent from work using paid sick leave for burden up to 30 work days, where the use of such leave was interrupted by the seventh grade. Specifically, where that leave was to begin on the, commence on the day of the birth of her child, and then to continue over the next 30 continuous work days. Where, with her using one and a half days at the end of the 15-16 school year, the day of her birth, half day for the last day of the school year, and then following into the 16-17 school year. Now, while the parties have argued over this case extensively, from trial court, appellate court, now before this court, Dynak's interpretation and view of this case has remained the same. Her right to use 30 days of paid sick leave was clear from the base of the statute, and that is clear and unambiguous. And this view of the case is confirmed by the dissenting opinion submitted by Justice Hudson in the Second District Appellate Court. However, when we presented this analysis to the court, we have showed that if you are to go beyond the base of the statute, which you need not do, but if you parse the statute and closely examine the definition of all the words that are relevant to this issue, the statute's syntax, the punctuation used, if you look at the history of the statute and the manner in which it was amended, if you look at this court's prior decision in Wings, that all of this further analysis confirms what is clear from the base of the statute. And what we have established before this court is that Ms. Dynak was entitled to use her accumulated paid sick leave for birth, and to use that leave over 30 continuous work days, and that she did not lose that right based on the happenstance of when her child was born. And she does not lose that right by any intervening period of non-work days, whether that be summer break in this case, or whether that be spring break, winter break, or another holiday period. And that the interpretation that we have offered this court is supported by the express terms of the statute. It avoids infamously reading in any limiting language statute. It is consistent with the rest of the school code. It is consistent with the statutory history of Section 246, and again, this court's decision in Wings. But to begin the analysis, we first look at the statute. While Section 246 is admittedly short, it has a number of different provisions. Are you saying that it's ambiguous? No, I don't believe Section 246 is ambiguous as to the issues that we are looking at today. It's specifically about the use of 30 days of paid sick leave for birth. The statute has three provisions which are, I think, relevant to this question. The first is that it provides that employees are to get a minimum amount of sick leave each year, that 10 days are allotted to them each year, and that employees are allowed to accumulate paid sick leave up to a minimum of 180 days. The second part is the definition of sick leave. The school code defines sick leave. It provides that sick leave shall be interpreted to mean personal illness, quarantine at home, serious illness or death in the immediate family or household, or birth, adoption, or placement for adoption, the latter part being added by amendment in 2007. After granting this right to use paid sick leave for birth, the school code also then provides one restriction around the use of this leave. It says that school districts may, although they are not required to do so, they may require medical certification as a basis for pay during leave after an absence of three days or personal illness for 30 days from birth. I think there are three conclusions you can draw by looking at the plain language of the statute. The first is that the statute clearly provides the right to use 30 days of paid sick leave. When does the birth, when does it begin at birth? Can it be started before birth? I think based on this Court's decision in Winks, it can't be before. Any sort of leave would be for pregnancy or something that would happen prior to birth. If there are complications that arise to a level of personal illness, I believe you could use sick leave, but that wouldn't be sick leave for birth. So you're saying it's for birth. So when is it for adoption? Adoption, I believe the statute doesn't, as drafted, I believe the statute says that school districts can require that there's proof that the adoption process is underway, and I believe that then gives rise to the right to use sick leave, but I don't think the statute restricts when leave for adoption has to be used other than if a district asks you to provide proof that the process is underway, you have to do so. Does the statute allow the mother and father, who are both teachers, to stagger their sick leave or their leave after birth or adoption? Can the mother take 30 days and then the father take another 30 days? The statute provides, the statute is gender neutral. It provides leave to any employee covered by Section 246. It doesn't restrict it to mothers or fathers to inherit. Someone who physically gives birth, I don't think there's anything in the statute that could stop someone or prevent someone to stagger their leave, in that you're allowed to use 30 days for birth, and as long as the use of the leave is connected to birth. But you were saying that the birth triggers the time for leave. So does the father get the same time as the date of birth, and the mother too? I don't think that Section 246 on its face requires that the use of leave for birth be immediate, if that's what you're asking. It says that birth gives rise to birth, as long as the leave is for birth. Where is this common, where if there's an employee at the district, and let's say their spouse stays home for the first 12 weeks, and then the employee wants to then continue care for the child when their spouse returns to work, I think the statute provides for that, that leave would be clearly for birth, and then they're allowed another 30 days to use for the birth. Take it whenever they wish? Not whenever they wish. There has to be a showing that the leave is for birth. I think the statute is self-limiting in that saying that it has to be for birth. I know the district has raised arguments to sort of stretch this and say that people will be trying to use leave years later, but I don't think there would be any showing or any basis to conclude that that leave is for birth, as long as the facts are clear that the requested use of leave is for birth, which I think is clear here. Ms. Steinack took leave starting the day her child was born, and then that continued on where she took 12 weeks of FMLA leave because the district had denied her use of paid sick leave. And the father would be able to take on the day the child is born, too. If they so choose. I think you could start leave under Section 246 when the child is born, or you could provide that sort of stagger with the spouse who is going to stay home first. It is all connected to the birth of a child. If there's large gaps where it's no longer seeming that the leave is tied to the birth of the child and providing care for it, then I don't think it would be for birth and wouldn't be covered. So some of the examples the district had raised two years later, it doesn't seem on its face how that would be for the birth of a child. That seems like something very different. Could it be six months later? Could it be second semester? On its face, Section 246 provides leave for birth. I think as long as the employee is showing that there's some tethering to the timing of the use of leave to the event of birth, it's possible. In the state and in other places, paid parental leave in other settings is getting longer. It's conceivable they could have a spouse. It could also be in the administration's benefit. It might be beneficial to have an employee want to finish out the semester and then start after winter break. It's not that it cuts both ways. So this isn't sick leave. It's paid parental leave, right? I don't think the name or whether you call this paid parental leave really decides the issue. It's paid sick leave for birth adoption or placement for adoption. I think whether we call that paid parental leave or not, it's a right to use it for those circumstances. I'm not sure whether we put that label on this, if it determines the issue or changes the analysis of the statutory language. Turning back to the statute, looking from the plain language, we see that the period that this must be measured by must be 30 working school days. And that's clear from the base of the statute in that Section 246 is a statute exclusively concerned with the granting of, accumulation of, and use of paid sick leave. To interpret and understand the word day within Section 246 to refer to some other period just doesn't follow. It wouldn't make sense to refer to days, calendar days, and use of a benefit that can only be used on a working school day. It's also clear from the base of the statute that there is no underlying medical need for the use of the leave. There's nothing on the base of the statute that says in order to use this leave, it is for some medical purpose. But doesn't the ability of the district to require medical certification after 30 days imply that the legislature considered that 30 days was more or less medically necessary? I think that reaches the opposite conclusion. Providing the use of 30 days of sick leave without any need or any concern for medical need, only if you're going to take leave beyond those 30 days would you need to have a medical basis for it. I think it just shows the opposite point. It's default. It doesn't matter. It's without concern. It's also being offered to fathers or to any employee without concern of whether that employee has given birth to a child or whether that employee is specifically caring for someone who has just given birth to a child. It's more focused on the addition to the family, the birth of the child. It's also clear from the base of the statute there's no express temporal limitations. We were just discussing that doesn't mean that sick leave for birth can be used at any time in any way. But what's clear is you can't look at Section 24-6 and see some constraints drawn around it expressly about when the leave can be used. And there is certainly nothing on the base of the statute that says an employee loses the right to use those 30 days just by the happenstance of when their child is born or because there happens to be some period of intervening work day. As I mentioned at the outset, I think this analysis was what Justice Hudson found in his dissenting opinion, which I think correctly spots the issue and understands how to interpret Section 24-6. He said this was simple and straightforward. Section 24-6 states that a teacher may use 30 his or her accumulated days of sick leave for birth. Sick days can only be used on a work day. Ms. Dynack requested to use the days of sick leave consecutively over 30 continuous work days immediately following birth, and the statute simply provides no exception to that. It does not provide that she is to lose her right to use that paid sick leave based on when her child was born. Now, if we go further and examine other parts of the statute, we'll see from a closer reading that what is clear from the base is confirmed by further analysis. Counsel, the appellate court states the plaintiff was granted all of the time that she requested. She just did not receive pay for the time off. Plaintiff will receive the funds she was denied just at a later date when she retires or separates from employment. And they also later said that the only thing plaintiff did not get was present use of the funds. Does this mean that the 28.5 days went into her sick bank for the pregnancy and she gets paid for it at termination of her employment or retirement? This goes to the issue of harm, which I think both the trial court and the appellate court majority misunderstood, which is that, first of all, she was harmed by this. She was entitled to use paid sick leave for birth. She lost an amount of around $7,000. That's real harm. Those are wages that go to her and her family. The other point is that she didn't receive everything she requested. She requested used paid leave. She was granted FMLA leave because the district had to give her unpaid leave under a separate statute. But more importantly, she doesn't have the right necessarily to ever be paid for those things. There's no right to be paid for accumulated paid sick leave at separation from employment. There's no right to be paid for it at retirement. And whether she could ever use it is purely speculative. The fact is teachers who have this right save up their sick leave over years of employment for the purpose of using it for the birth of a child. And then the district has simply denied it. Also, the arguments that she wasn't harmed sort of, I think, it shows sort of how preposterous that claim could be when you think about how that works, which is that the district says there's no harm here because she wasn't paid for the days. She still has them. She can use them. But if you're sick and there's no dispute that you're sick and you go to the district and say, I'm going to use my paid sick leave for personal illness, and they deny it to you, does that mean then if I file a claim to try to recover that, they're just going to say you weren't harmed because you still have the days? The statute provides the basis upon which you can use paid sick leave. So you have to be able to use it when one of those qualifying events occurred and you were harmed when you were denied the right to use that leave. Counsel, is it presumed that the day for getting paid is during the school year? If she had given birth, she gave birth on the last full day of the school year, but if she gave birth during the summertime, would she be entitled to 30 days paid for birth as her child? It would be if she was taking paid sick leave at the start of the next school year, the next working day. You can only use paid sick leave on a working day. On working days. Correct. But if she had the baby in the summer, she wouldn't have been able to even apply for those in the summer because it wasn't a day of work? An employee wouldn't ask to use paid sick leave over a summer break. They're not expected to be at work. You would have put in a request to take leave at the start of the next school year. For birth. For birth, which is common. Most of the time, these work out where you tell the district months in advance. I'm expecting to have a child. Here's the leave that I want to take. In the case of a summer birth, you would say, I want to take FMLA leave for 12 weeks at the start of the school year and I want to use 30 days of my paid sick leave for the first half of that leave as I'm entitled to under Section 24-7. I think that also the point that you just raised is sort of confirmed by the further statutory analysis we've done, which is that if you look at the language used in relation to the 30 days, it confirms that it can only be measured by working school days. The language the legislature has used is as a basis for paid direct leave after an absence of 30 days for birth. First, we look and see that the legislature has used the word absence. Absence is commonly defined as a failure to be present at the usual or expected place. This word is also used in conjunction with the word leave in a manner that's similar to the common phrase leave of absence, which has been defined as temporary absence from employment duty with the intention to return during which time remuneration and seniority are not normally affected. Now, this is to make clear the point that I think is obvious, which is school employees are not absent during summer break. They're not absent on winter break. They're not absent on holidays or weekends. They're only absent when they are expected to be at work, and the legislature is making clear that the period at issue here is working school days. It also uses the language as a basis for pay, again reinforcing the notion that what we are concerned with is that an employee is paid for the day that they're not present. School employees are not compensated for their time worked over the summer. All of their compensation is based on working school days. We can also look at the use of the word days with respect to the rest of the school code. Examination of the school code shows that it uses a variety of different terms to refer to different days. Sometimes it uses working days. Other times it uses calendar days. At some points it uses school days, but the most common way it uses it is days absent any immediate modifier. Now, the fact that day doesn't have a universal meaning throughout the school code doesn't mean that it can't be read consistently within a specific provision. If you look at Section 24.6, the only reading of the word day that makes sense is working school day. As both the majority and dissent have observed, it's a fact that Section 24.6 is concerned with granting accumulation of use of paid sick leave. It simply doesn't make sense to talk about periods of using paid sick leave to include days where you could not use that leave. Now, turning to the history of the statute and the discourse prior to the decision in Winks, those reinforce the fact which both the majority and dissent correctly found, which is there is no medical purpose for this leave. This court decided in Winks v. Normal Community School District 5 in 1979, looking at Section 24.6 prior to the amendment to include birth adoption in replacement for adoption, the court was asked to decide whether use for so-called normal pregnancy or childbirth or pregnancy or childbirth absent complications rose to the level of a personal illness. The court concluded that it did not. Specifically, in reaching that conclusion, it looked at changes made to the school code after the passage of the Pregnancy Discrimination Act and changes to the law that were introduced to make sure that employees could not be fired for becoming pregnant or having a child and not being able to work as a result. The court concluded that the period following childbirth was referred to elsewhere in the school code using the words temporary incapacity or physical incapacity and that those were contained provisions relating to discharge and seniority. When the legislature then amends 24.6 in 2007, it does not use these terms to include leave. Instead, it uses birth adoption in replacement for adoption. In using the word birth, we are to conclude that when the legislature uses a different term elsewhere in the statute, that that word has to mean something different. That is, as the district has argued, if the leave was intended to cover the postpartum period, the six to eight week period, well then it would have used the language temporary incapacity or physical incapacity as this court concluded that those terms mean elsewhere in the school code. So birth must mean something different. It is a clear indication that the legislature did not intend for this to have an underlying medical purpose. You can also see from the structure of the statute that it is clear that there are two different categories of leave. When 24.6 was amended, birth adoption and placement for adoption were not added to the previously enumerated bases for sick leave. The legislature decided to insert a comma and the word or to separate them. The word or, as commonly seen, is disjunctive. It is to propose two different alternatives. The legislature, if it wanted to treat birth similar to personal illness or to have an underlying medical purpose, the district's argument might carry a little further if it had been linked to personal illness. If birth had been placed with the previously enumerated bases, but instead it was linked with adoption or placement for adoption, which clearly have no medical purpose. We can also see this reinforced by the doctrine of nosoteriososis, to understand birth by the company that it keeps. It is linked with adoption or placement for adoption, which again have no medical purpose for the leave. It makes clear that this, as the appellate court majority said, appears to be leave for the adjustment to the family. It is not about recovery from childbirth. And again, as we talked about, that's reinforced by the fact that it's gender neutral, that it's provided to an employee without any concern or regard to whether they themselves have given birth. Thank you. Thank you, Mr. Toma. Mr. Douches. Thank you. May it please the court, my name is Adam Douches and I represent the defendant, Board of Education of Wooddale School District 7 in this case. Before I address the merits of this dispute, I'd like to address one argument raised in Dynack's reply brief, and that's that the school district has somehow waived certain arguments in this case. For instance, Dynack claims that the district has never made the claim that under Section 24-6, sick leave may be used only when the employee is unable to attend work. That's long been the school district's position in this case. And if you look at the record, it clearly establishes that. For instance, attached to the complaint is Exhibit 4, is a letter from my partner, John Fester, that addresses this. And he spells out that it's our belief that sick days are provided to give employees a source of leave time with pay when one of the events in Section 24-6, illness, death, birth, adoption, requires an employee to miss scheduled work days. This has been our position from the outset. We've argued this at every turn. But moreover, that claim that we've somehow waived this is legally incorrect as well. This court has long held that an FLE, such as a school district, may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court. And that was here in this case. If you look at the complaint and the exhibits attached to the complaint, it has all the factual record that's needed to rule on all these issues and all these arguments. With that being said, I'd like to address the merits of this case. You just heard Mr. Thoma say that Ms. Dynack's position in this case is that there's no explicit temporal limitation with respect to when sick leave may be used. Thus, Dynack contends that sick leave for birth does not need to be connected to the event of the child's birth. Her interpretation, however, would require this court to abandon several of its longstanding rules regarding statutory construction and permit sick leave used for birth to be used in an entirely different manner than the other qualifying events set forth in Section 246. It would also fly in the face of how this court has determined what sick leave actually is. In sum, the plain language of the statute does not support her interpretation, and it would lead to absurd results. By contrast, the school district's argument in this case, as I just said, is that sick leave must be used at a time when an employee is unable to attend work because of the birth or illness or other qualifying event. That is, sick leave use must be tethered to the event causing the need to be absent from work. It can't be delayed 10 weeks, 10 months later down the road. Mr. Tome has given us no objective way to determine when that time is too far remote. The question was asked would a year later or six years or 10 months later be okay. We don't know because it's arbitrary under that interpretation. As I just said, this court in In Re Marriage of Abril, a case cited by Dynac in this case in 2010, stated sick days and vacation days are alternative wages meant to be paid when the wage earner is unable to work. That interpretation by Ms. Dynac would fundamentally change that. It would make it paid parental leave to be used at a time when the employee could work but wants to remain home to bond with their child. Counsel, the appellate court found the purpose of birth-related leave was family adjustment, right, not physical incapacity. Correct. Is that a little bit at odds with an ultimate ruling of no carryover? I do. I think that there's some inconsistency in the appellate court's opinion, and I disagree with the notion that birth should be treated as family adjustment. What the appellate court did was say there's two distinct categories of leave, personal illness, serious illness, quarantine at home, or birth, adoption, placement for adoption. I think that's incorrect for several reasons. First, the statute addresses birth, and as we laid out in our brief to this court, this court has defined birth using dictionary definitions of what birth is, and it's the discrete event of a child coming forth from the mother's womb. It's an act. It's a discrete event. Family adjustment and bonding is not a discrete event. Moreover, to put birth with adoption and placement for adoption is contrary to the plain language of the statute. The statute addresses adoption and placement for adoption and how it must be used, and the statute's clear. It must be used at a time when the adoption or placement for adoption is underway. Again, tethered to the event, that being the adoption process and it being underway. But to carry that analysis to its end, birth would be the only term within Section 246 that would be used differently. It would mean something entirely different, and it wouldn't need to be tethered to the event. So I do think that's an incorrect analysis on the appellate court's behalf. I think they got the ultimate judgment. The judgment was ultimately correct, but its analysis was flawed a couple of ways. Does your analysis apply equally to a father who wishes to take sick leave or birth leave? It does. And that being it, it's tied to the event. Not to his incapacity to work. Well, I think it's the more reasonable interpretation is that it's tied to either care for the child or the mother immediately upon the event, because there's nothing stopping, and I think the question was posed to Mr. Toma, of stacking the leave, where this is far beyond when the birth occurred. It could be used six months later. There's no, like Mr. Toma said, there's no temporal restriction on it. So a father could come into work a year later and say, I'm going to stay home with my child for 30 work days, under their interpretation. If you untether it from the event, the situations are almost endless. Because a school district would be on its heels having to say, no, that's not for birth. I'd like to address the context of the language. Because throughout this litigation we've heard from Ms. Dynack that the language says 30 days for birth is a right to be used. That's not what this language actually says. If you read this language, it doesn't deal with an amount of leave available for birth, which the legislature could have easily written. But with a school district's ability to require medical certification, that is a doctor's note, as a basis for pay during leave after an absence of 30 days for birth. The context here is critical. What the legislature did was simply set a longer absence period of 30 days for birth before a doctor's note could be required to justify the use of paid sick leave for day 31 in all subsequent absences. But that language is connected with personal illness. And Ms. Dynack does not want to talk about that piece of this analysis. Because to interpret the statute the way she does with respect to birth, you also have to interpret the statute with respect to personal illness the same way. And that's where you get absurd results as well. Because just change the facts. If Ms. Dynack were ill on the last day of school, and this statute says three days for personal illness, under that interpretation she could come back and say, I didn't get to use my three days for personal illness. Because that's what she's doing with respect to birth. And that's where an absurd result comes in. And far from putting birth in the category of adoption and placement for adoption, the legislature specifically connected birth with personal illness. It's in the sentence. That's where that 30 days for birth comes in. Three days for personal illness or 30 days for birth. It's the same sentence. Adoption, meanwhile, and placement for adoption is in an entirely different sentence. And again, that language says the adoption process must be underway. All right. I'm not quite sure I get that argument. Can you help me here? It's one long paragraph. Sure. When you say it was in a different section, it's like one sentence. I'm sorry. It goes on and on and on with a lot of commas, and that's what we're trying to sort out. I think one of the questions I have is you seem to be arguing this is called sick leave. Sure. And so the idea of some kind of physical illness is at play here. But in the same long sentence that we're talking about here, the statute also deals with leave for adoption, which doesn't seem to have any tie to personal illness or incapacity. Sure. So the legislature chose to put all of these different ideas in this one section called sick leave, even though you would agree that sick leave is not well defined when we're talking about adoption, correct? Well, I think it is defined. It's defined in the sense that it makes clear that the adoption or placement for adoption must be underway. The district can require evidence that it's underway. But it has nothing to do with being sick. Correct. I don't think you can make that leave. I think you're correct on that point. But I do think that that language makes clear that the sick leave use for that event has to be tied to that event. What Ms. Dynack is proposing is that for birth it doesn't need to be connected to the event at birth and the act of coming forth from the mother's womb. Because if you just change the facts here and push her birth back by several months and then she wanted to use sick leave for that birth ten weeks later, which is what she's doing here, it's not for birthing. It's not tethered to the event. Because if she could take it ten weeks later at that point, what's stopping her from taking it ten months later? Because as Mr. Thoma just said, there's no temporal requirement. There's no limit. So to accept that argument under one factual scenario where she sought to use the days over a ten to twelve week span is no different from saying I want to use the days over a year span or a two year span. And that's where the absurdity of that argument could actually result. So you're saying that opposing counsel position is if the birth was the first day of the school year that she could use it a year later? I think that's the logical end point of their argument. And you're saying that that way the birth event doesn't start the 30 days? Because here the only reason is summer, right? I mean, there was a birth event on the last day of the school year, if I'm right on the facts on that? Sure. But throughout the briefs, the position is that it doesn't have to be used consecutively. Now, that's what Ms. Dynack did. She wanted to come back the first work day the following school year. But there's nothing in their argument that suggests that you have to use these days consecutively. As Mr. Thoma said, it just says for birth. We've long argued that under that interpretation, you could theoretically use one day a week for 30 weeks. There's nothing in the statute that would prohibit that. If we're going to carry that argument to its logical end, that's where we go. But if we go back to my earlier question about if the appellate court's right that it's for family adjustment, right? Arguably the family adjustment would come not a year later or two years later or whatever when they want to use it. Well, under the FMLA, which addresses bonding, it gives you 12 months. So to answer that question, it could be theoretically for bonding a year later. And that's why that analysis is incorrect. The statute doesn't address family adjustment or bonding. Those words don't appear in the statute. That's something fundamentally different from the dictionary definition of birth, which is what this court has relied on to interpret undefined terms. Should we be bothered at all what appears to be an unequal application of the use of a leave for birth? That a teacher that gives birth in the middle of the year can use all of her birth leave, but one who gives it at the end of the year can't use much at all? Well, I don't necessarily think that it's an unequal application. And for starters, Ms. Dynack is arguably in a better position for having given birth when she did. She didn't have to use any of her sick leave. And she got to bond with her child for 10 weeks following that event before having to come back to work. She still has those 28.5 sick days that she can use for another birth or that she can use at retirement. There's nothing stopping her from using those days. She got to bond with her child. She got to recover from illness. And she didn't have to use sick leave. For our other teachers who give birth during the course of the school year, they do have to run their sick leave. And they're out those 28.5 days or 30 days or whatever they need. So it's not an unequal treatment. And to the extent she was somehow treated differently, she's arguably in a better spot than a teacher who had to use those 30 sick days. I'd like to go back to the language of the statute because I think it's important. Had the legislature intended to provide 30 days for family adjustment and bonding, it would not have granted such a benefit in the midst of language speaking to a school district's ability to require medical certification, which obviously relates to illness or incapacity. Family adjustment and bonding doesn't relate to illness or incapacity. But this is what the statute says. These are its words. I thought we kind of cleared that up. Sure. The language is that if the school board does require a certificate as a basis for pay during leave of less than three days for personal injury or personal illness, the school board shall pay. So the language about the certificate from the doctor and all that seems tied to personal illness. Yes. And you agreed that the statute as a whole, including adoption, is not necessarily all about personal illness. And when the statute addresses things that aren't related to incapacity, it spells out that we have the ability to make sure that it's underway. So it's not abuse. So there's not an absurd result. Counsel, will you respond? I know you said the 28.5 days are still there, so you can still use it. You heard the response by opposing counsel to that and the whole harm issue. Could you just briefly address that? Well, the summer break is not a work day. Everyone agrees with that. She was paid her entire salary for the 16-17 school year. She was able to bond with her child for 10 weeks and recover from the event of birth. And she did not have to use sick leave. So her sick leave still accumulates. So she has whatever she had in the sick leave bank before that, plus the 28.5 days that she didn't have to use. The district never ran those days and didn't pay her her worth of wages. The district just said, you're not sick anymore. You can return. There's been no evidence that's ever been presented that she was unable to return to work at the start of the next school year. So the need, again, is not present. And that's the district's position. It's not opposed to mothers or fathers bonding with their kids. But that's not what this statute addressed. And we didn't take her sick leave from her. It's still there. Does that answer your question? Yes. Okay. Counsel, how would the school board deal with it if the mother gave birth on the last day of school before the Christmas break and there's two weeks off and at the beginning, resumption of school after the break, she wants to use her 30 days? Well, I think we'd treat it the same way. How would you treat it? In that those days, let's say it's two weeks, let's say it's 10 days, it comes off the six weeks following birth. Because that's been our position, is that immediately following the birth during the postpartum period, that six weeks, that's when a mother's body is recovering from the event. Right. And in that example that you just gave, I think you would discount those two weeks. They're not work days. So the teacher would have 20 work days following that break to use. That's a consistent reading of the law. Again, it's tethered to the event of birth when you can use that time. Would that even extend to a long weekend? Would that extend to a... Right. I mean, where there's one day before the, say, the Friday's a holiday and you take Thursday and then... Yes. What you're talking about is just shrinking that intervening period. It would be the 30 work days immediately following the event would just be discounted by whatever that break is. Whether it's two weeks or whether it's three days, it would come off that 30 days. It's how we would interpret the law. I'd like to go back to the absurd result because that's ultimately where the appellate court landed in deciding this case. And the argument that we've heard must equally be applied to personal. Again, that's right for absurd results to flow from. Because under that example that you just gave, Your Honor, if a teacher was ill on that Friday and there was a long weekend and they didn't get to use those three days, it's inconceivable for someone to come back on Tuesday or Wednesday and say, look, I was sick over the weekend. I didn't get all my days. I'm going to take these days off. So just in sum... You're saying that it would be the 30 work days. May I finish the question, Chief? Yes. The 30 work days immediately after the birth but within six weeks of the birth. Correct. Okay. Immediately upon the event of birth is when the clock starts running to use those days just like you would for any of the other events. Any other questions? May I ask? Yes. The six-week reference, is it in the statute? Is it six weeks in the statute? It's not. Nor is continuous work days what's been proposed by Ms. Dunn. We're asking for common sense. Thank you. Thank you, Mr. Douches. Mr. Toma? I think there's a few things we can draw off the discussion that Mr. Douches just had with the court. First is, most clearly, the district's interpretation of 24-6 is entirely premised on reading in additional limiting language in the statute. As we just heard Mr. Douches point out, that he's asking the court to read in a six-week limitation, which is contrary to the statutory analysis that I went through previously, but it's simply not contained in the statute. As we pointed out, Section 24-6 provides the right to use 30 days of paid sick leave for birth. And some of the questions that you showed, it's not. According to the district, it's not really 30 days of paid sick leave for birth. According to the district, it's however many work days fall within a six-week period from birth. It's simply not what the statutory language provides. It reads in a host of limitations, and it assumes a medical purpose for the leave, which is at odds with the statutory language. We've also heard a lot of arguments from the district about the timing of birth, claiming that Dynac's interpretation is that it's to be untethered, to be used in any sort of way. As we pointed out in our reply brief, the district's theme in arguing this case is to be building straw men and setting them blades. It is repeatedly argued against points and contentions that Dynac has not made. Dynac does not argue that the sick leave for birth is untethered from the event of birth, argue just the opposite, sick leave must be for birth. Now, where the district wants to draw your attention is that it can be difficult, that it is not a bright-line test, that there's not any obvious answer to when the leave stops being for birth, but it is nonetheless a factual inquiry that can be answered based on the specifics of a certain type of leave. Counsel, my notes, sir, you said in opening that there is no express temporal limitations in the statute. Is that consistent with what you just told us? That point is true, and that point is made to say when you look at the statute, it doesn't explicitly say when 30 days for sick leave has to be used for birth. That doesn't lead to the conclusion, and that is not the position we've advocated, that you can use it whenever. We have said that the statute is temporally limited in the fact that the leave has to be for birth. If the request to use paid sick leave based on the event of birth is untied to the event of birth or there's no showing that it is appropriate for birth, you wouldn't be entitled to do so. What if she had the baby like she did the last day of school, and she decides to take her sick leave between Thanksgiving and Christmas? I think if there was an explanation about why she had delayed the use of leave, perhaps her husband could take sick leave for birth but could only do so at a certain time, and then she was going to come in and continue to care for the child, I think there are factual circumstances where the delayed use of leave could be appropriately tied to the use of leave. Often it is the case, as I did when my daughter was born, I took delayed leave. I did so after my wife returned to work after 12 weeks. That seems clearly tied to the event of birth. So it's not really sick leave, it's personal leave. Is that right? I think it's still sick leave for birth. The legislature has provided the use of paid sick leave for birth. I think we have to understand what that means. As long as it's tied to the event of birth, you should be able to use it. But again, in this case, that wasn't what happened. It was their continuous work days. I believe that if there's difficulty in drawing the outer bounds of when this leave can be used, which the district tries to point to and say that this is administratively difficult to decide, I think that's a question for the legislature. If they want a limit drawn, then ask the legislature to draw a 12-month limitation, similar to what is available under the FMLA. But that's not what the statute provided. It provided that sick leave may be used for birth, and if an employee can show that he's requesting the use of leave that's tied to that event of birth, they're entitled to use 30 days. And they're not to lose that right based on intervening periods of non-work days, which is the real issue, at least for misfinanced leave. It seems like by your hypotheticals that perhaps opposing counsel's argument wasn't that far afield, right? As to time limitations. You're saying it has to be tied to birth, and then you gave some examples to Josh Garman, and it just doesn't seem like their argument that it could be virtually any time. I'm sure you could, speaking of absurdity, get to the point where it would be very difficult to tie an event to birth down the line. But there seems to be some basis for opposing counsel to argue that, don't you think? I mean, the fact that you have to interpret for birth. So of course he could put out an example saying, oh, someone tried to use it two years later in sort of preposterous ways. But I don't think that that would be tied to birth. I also think that those type of hypotheticals sort of embody a sort of unnecessary cynicism about public school employees. And really what it's assuming is that public school employees would be trying to not take leave to spend time with a newborn child, but instead delaying use of leave for years to take for some other reason. I think it's unreasonable if you talk to a new parent, a new mother or a new father, that they would contemplate delaying the use of leave. And so to view this issue through the fact that employees are likely to try to not take leave for birth, not spend time with their child, and while there might be slight delays because parents are trading off, I think you can draw reasonable constraints around it, and I don't think there's any basis to think about that employees would try to take leave in that manner. And I think the facts of this case also reinforce that. Ms. Dynack requested to use paid sick leave at the beginning of the school year. The district denied it. What did Ms. Dynack do? She took 12 weeks of unpaid leave because it was crucial for her to be with her child. It's the focus of these employees requesting the leave to spend the time with their child, and the paid sick leave is there to ease the extreme financial burden of doing so and having that time off. Oftentimes, employees simply can't take leave if they're not able to access their paid sick leave. In this case, though, she didn't have any harm. She was with her child for the whole time, which what she's arguing about really is just being compensated for in the next school year, but she still gets it at the end of her work. If she wants to retire, if she wants to leave, that time will still be available to her and pay for it at that time when she wants to leave. So the harm is what I'm looking for. I mean, the harm, I think, is crystal clear. She was entitled to use the leave under 24-6. She was denied that leave. For the district to claim that she was lucky to have her child born, then she was. You're saying that the district should have paid her during the summertime? No, during the period of her leave. She took leave for 12 weeks at the start of the 16th and 17th school year. That's the period when the leave was used, and that she should have been able to use the remaining 30 days of her sick leave. And again, as we've talked about before, she has no right to ever be compensated for those days. She may not have another basis to ever use paid sick leave. She has no right to be paid for those days of retirement. There is no value. The value of paid sick leave is to be able to use them for the reasons that the statute provides and to be compensated when you're absent from work. And the claim that she was lucky that she didn't have to use paid sick leave, I think, is a bit absurd. And particularly, I think, it's reflected by this case. We are here before the Supreme Court arguing about her right to use those days of paid sick leave. That was crucial to her. That was money that she was owed based on work she has already performed, and that she should have been entitled to pay for those days. It's not just about the leave. The use of paid sick leave is about compensation during that time, which is why they provided rights to use leave for sick leave, adoption, or placement for adoption. And the loss of that salary and the denial of her statutory rights, I think, constitutes clear harm. Do you agree that with the board's counsel, that if we follow your interpretation, the teacher could use the sick leave one day a week for 30 weeks? I don't see that strikes me as unlikely, because I don't know how you would argue that that leave is for birth. I don't think Section 24.6 on its face. Are you asking us, then, to set a temporal limit of what for birth means? Whatever we decide, of course, is going to affect other cases. We've got the current facts here, but it may affect others. Is it six weeks? Is it ten weeks? Is it a year? I think it will have to depend on the facts of a specific request for use of leave for birth. Now, there are other things that you could look to in deciding what for birth could mean, but where the limits would be. The FMLA clearly provides 12 months to use the leave. It's not that you could read in the limitation, but that seems like a reasonable default on when you can use the leave. It's what the federal statute provides and presumes that the adjustment period goes on for 12 months. But I think, in general, it's always going to be a fact-specific inquiry. And overwhelmingly, most employees are going to use this leave upon the birth of their child. And as the case here, we're really concerned about what happens based on these intervening periods of non-work days and how that affects the right to use leave. But yes, there has to be some understanding of what for birth means, but I think that can be a factual inquiry. And again, the legislature drafted the statute to provide 30 days of leave. As much as we're having difficulty drawing a bright line about when you can use that leave, I think that has to be up to the legislature to draw the statute more precisely if it is difficult to decide when leave is no longer for birth. But I think in most cases, the factual inquiry would be obvious. Is it tied to providing care for a child at home? Is a parent switching off with another to continue to provide that care? Those things are clearly tied to the event at birth. So, to get it straight, in this circumstance, with her giving birth on the last day of school, if her spouse is a teacher, the spouse could take the 30 days beginning with the start of the school year. And then she takes 30 days beyond that. That's right? I think that would be right. The FMLA separately deals with when both spouses work at the same employer and how leave is taken. 24-6 doesn't. So, in that circumstance, I believe that each employee should be entitled to use paid sick leave for birth. And I don't see why they couldn't run them concurrently, as is the case where many employees do, even where their spouse may work at a different employer. But it's still tied to the birth. Those are two parents trying to take care of their newborn child and stretching out the time before they deal with the very high cost of daycare and trying to bond with that child and spend time. And I don't see anything in Section 24-6 that says that you can't use leave in that manner. Thank you. Okay. Thank you, Mr. Toma. Thank you. Case number 125062, NINAC versus the Board of Education of Wooddale School, District Number 7, will be taken under advisement as Agenda Number 9. Thank you, Mr. Toma and Mr. Douches, for your arguments this morning.